UNITED STATES DISTRICT COURT
EASTERN DISTICT OF MICHIGAN
SOUTHERN DIVISION

RENIQUE R. GREENLY,

        Plaintiff,         Civil Action No.: 14-12345
                                     Honorable Terrence G. Berg
        v.                     Magistrate Judge Elizabeth A. Stafford

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,

        Defendant.
_____/

## REPORT AND RECOMMENDATION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [R. 14, 22]

Plaintiff Renique Greenly appeals a final decision of Defendant Commissioner of Social Security ("Commissioner") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions, referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). The Court finds that the Administrative Law Judge ("ALJ") erred in failing to obtain a qualified medical opinion on the issue of medical equivalency, failed to give good reasons for the weight given to the treating physician opinion of record, and erred by formulating a RFC without the benefit of a

medical opinion.  For these reasons, the Court **RECOMMENDS** that:

- the Commissioner's motion [R. 22] be **DENIED**;

- Greenly's motion [R. 14] be **GRANTED IN PART** to the extent she seeks remand, but **DENIED IN PART** to the extent she seeks reversal and a direct award of benefits; and,

- the Commissioner's decision be **REMANDED** for further consideration, pursuant to sentence four of 42 U.S.C. § 405(g).

## I.   BACKGROUND

### A.   Claimant's Background and Claimed Disabilities

Greenly was a thirty-nine-year-old high school graduate on her alleged onset date of November 15, 2010, who had previously worked as a medical billing clerk, waitress, secretary and bookkeeper.  [R. 10-2, Tr. 49-50; R. 10-5, Tr. 151; R. 10-6, Tr. 173].  She alleged disability as a result of mid and lower-back pain.  [R. 10-6, Tr. 172].

### B.   Procedural History

Greenly filed applications for DIB and SSI,[1] which were denied.  [R. 10-4, Tr. 92-100; R. 10-5, Tr. 151-54].  Greenly filed a timely request for an administrative hearing, held on June 5, 2012, at which both she and a

---

[1] Although the record does not contain Greenly's SSI application, it does contain a notice denying that application, [R. 10-4, Tr. 97-100], and the parties do not dispute she sought SSI benefits.

vocational expert ("VE") testified. [R. 10-2, Tr. 42-71; R. 10-4, Tr. 92-100; R. 10-5, Tr. 151-54]. In an October 15, 2012 written decision, the ALJ found Greenly not disabled. [R. 10-2, Tr. 27-41]. The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. [*Id.*, Tr. 1-7]. Greenly timely filed for judicial review. [R. 1].

### C.     The ALJ's Application of the Disability Framework

DIB and SSI are available for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). A "disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

The Commissioner determines whether an applicant is disabled by analyzing five sequential steps. First, if the applicant is "doing substantial gainful activity," he or she will be found not disabled. 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4).[2] Second, if the claimant has not had a severe impairment or a combination of such impairments[3] for a

---

[2] Sections 1520(a)(4) and 920(a)(4), which pertain to DIB and SSI respectively, list the same five-step analysis.
[3] A severe impairment is one that "significantly limits [the claimant's]

3

continuous period of at least 12 months, no disability will be found. *Id.* Third, if the claimant's severe impairments meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, the claimant will be found disabled. *Id.* If the fourth step is reached, the Commissioner considers its assessment of the claimant's residual functional capacity ("RFC"), and will find the claimant not disabled if he or she can still do past relevant work. *Id.* At the final step, the Commissioner reviews the claimant's RFC, age, education and work experiences, and determines whether the claimant could adjust to other work. *Id.* The claimant bears the burden of proof throughout the first four steps, but the burden shifts to the Commissioner if the fifth step is reached. *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

      Following the five-step sequence, the ALJ concluded that Greenly was not disabled. At step one, the ALJ found that Greenly had not engaged in substantial gainful activity since her alleged onset date. [R. 10-2, Tr. 32]. At step two, he identified the severe impairment of lumbar degenerative disc disease. [*Id.*]. At step three, he determined that Greenly's impairment did not meet or medically equal Listing 1.04 (Disorders of the spine), concluding that the record lacked any evidence of

---

physical or mental ability to do basic work activities." §§ 1520(c); 920(c).

nerve root compromise, motor, sensory or reflex loss or muscle weakness, or spinal arachnoiditis or lumbar stenosis with an inability to ambulate effectively.  [*Id.*, Tr. 33].

Next the ALJ assessed Greenly's residual functional capacity ("RFC"), finding her capable of sedentary work that required "no more standing or sitting greater than 20 minutes at one time."  [*Id.*, Tr. 34].  At step four, the ALJ relied on this RFC and VE testimony to conclude that Greenly could return to her past relevant work, and thus she was not disabled.  [*Id.*, Tr. 37].

## II.   STANDARD OF REVIEW

Pursuant to § 405(g), this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made in conformity with proper legal standards.  *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks and citation omitted).  Only the evidence in the record below may be considered when determining whether the ALJ's decision is supported by substantial evidence.  *Bass v.*

5

*McMahon*, 499 F.3d 506, 513 (6th Cir. 2007). "If the [Commissioner's] decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted).

The significant deference accorded the Commissioner's decision is conditioned on the ALJ's adherence to governing standards. "Chief among these is the rule that the ALJ must consider all evidence in the record when making a determination, including all objective medical evidence, medical signs, and laboratory findings." *Gentry*, 741 F.3d at 723. *See also Rogers*, 486 F.3d at 249. In other words, substantial evidence cannot be based upon fragments of the evidence, and "must take into account whatever in the record fairly detracts from its weight." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (internal quotation marks and citation omitted).

The Commissioner must also adhere to its own procedures, but failure to do so constitutes only harmless error unless the claimant has been prejudiced or deprived of substantial rights. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009). An ALJ's failure to use an "adjudicatory tool" that does not change the outcome of the decision is

6

harmless. *Id.* at 655-56. On the other hand, substantial errors like ignoring evidence in the record or failing to follow the treating physician rule are not harmless. *Id.*; *Cole v. Astrue*, 661 F.3d 931, 940 (6th Cir. 2011); *Gentry*, 741 F.3d at 729. An "ALJ's failure to follow agency rules and regulations denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Cole*, 661 F.3d at 939-40 (internal quotation marks and citation omitted).

With these standards in mind, this Court finds that the ALJ's determination that Greenly is not disabled is not supported by substantial evidence.

## III. ANALYSIS

Greenly argues that the ALJ: (1) failed, at step three, to obtain an expert opinion on the issue of medical equivalency; (2) failed to give good reasons for the weight given to her treating physician's opinion; (3) played doctor in developing her RFC without the benefit of a medical opinion; and (4) failed to properly assess her credibility. The Court finds merit with the first three of Greely's arguments, which will necessarily require a reevaluation of her credibility on remand.

### A. Medical Equivalency

Greenly argues that the ALJ erred at step three in failing to obtain a

7

medical opinion on the issue of equivalency. This case proceeded under the experimental "single decisionmaker" model, which allows non-medical agency employees to render an initial denial without expert opinions on the issue of equivalency or disability. 20 C.F.R. §§ 404.906(b)(2), 416.1406(b)(2). However, courts in this district overwhelmingly agree that this procedural change at the initial level did not alter the agency's "longstanding policy" that a medical opinion on the issue of equivalency is necessary at the administrative hearing stage. *Fowler v. Comm'r of Soc. Sec.*, No. 12-12637, 2013 U.S. Dist. LEXIS 137277, at *14-15, n.8, 2013 WL 5372883 (E.D. Mich. Sept. 25, 2013) (collecting cases and remanding for lack of medical opinion on issue of equivalence) (quoting SSR 96-6p, 1996 SSR LEXIS 3, 1996 WL 374108, at *3 (July 2, 1996)).

Here, Greenly's benefits were denied initially based on the opinion of a non-physical single decisionmaker. [R. 10-3, Tr. 78]. The ALJ did not rely on that opinion at step three, but instead analyzed Greenly's ability to meet or medically equal Listing 1.04 himself, still without the benefit of a medical opinion. [R. 10-2, Tr. 33-34]. He found that the record was devoid of any evidence of the factors necessary to satisfy the listing. [*Id.*].

Although reliance on a single decisionmaker may be considered harmless error when the evidence overwhelmingly demonstrates that the

claimant could not meet the elements of a given listing, (*see e.g. Norman v. Comm'r of Soc. Sec.*, No. 14-10038, 2014 WL 7691994 (E.D. Mich. Dec. 22, 2014) *adopted in relevant part* 2015 WL 348902 (E.D. Mich. Jan. 23, 2015)), such is not the case here. Listing 1.04 requires evidence of a spinal disorder "resulting in compromise of a nerve root" and, applicable to this case, "[e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test." 20 C.F.R. pt. 404, subpt. P, appx. 1, § 1.04A. Although the ALJ claimed the record was devoid of any evidence satisfying these criteria, a review of the record reveals at least "conflicting or inconclusive evidence" related to Greenly's ability to meet or medically equal Listing 1.04. *Rabbers*, 582 F.3d at 657.

Prior to her onset date, in 2006, Greenly was diagnosed with degenerative disc disease from T10 through L6 (she had six lumbar vertebrae), with evidence of spinal stenosis, foraminal narrowing at L-4, endplate changes at L4-L5 and spondylosis with osteophytes at multiple levels. [R. 10-7, Tr. 238-40]. A treating physician recommended that she receive a disc replacement, but she declined at that time due to child care

9

issues. [*Id.*, Tr. 239-40, 278]. By 2008, she had suffered a collapse at L5-L6, and had osteophytes at every level that had progressed since 2006. [*Id.*, Tr. 236-37]. She was again considered a candidate for an artificial disc due to her "severe problem." [*Id.*].

Treatment notes from Greenly's primary care physician, Francis Magyar, M.D., during the disability period showed conflicting examination findings. Although he once noted weakness in her lower extremities, his other examinations found a normal back and normal neurological and sensory functions. [*Id.*, Tr. 221-22, 225-29, 241-42, 253-54]. In 2012, Greenly sought treatment for her pain from surgeon Dr. Allen Dunning, whose notes also revealed conflicting examination findings. For example, on at least two occasions, he noted an irregular gait, either ataxic or limping. [*Id.*, Tr. 264-65, 278-79]. At other times, he found no problems with Greenly's gait. [*Id.*, Tr. 243-44, 260-63, 270-77]. Similarly, at certain times he noted tenderness to palpation, decreased motor strength, coordination and reflexes, while documenting normal findings at other appointments. [*Id.*, Tr. 243-44, 260-65, 270-90]. Twice he documented abnormal straight leg raising findings. [*Id.*, Tr. 262-65].

Thus, although Greenly may not ultimately meet Listing 1.04, the "conflicting and inconclusive" nature of the evidence of record, and the

ALJ's lack of expertise to evaluate such evidence, prevent this Court from concluding that the ALJ's error in failing to elicit a medical opinion on the issue of equivalency was harmless. *Rabbers*, 582 F.3d at 657.

## B. Treating Physician Opinion

Greenly argues that the ALJ erred in failing to properly weigh Dr. Dunning's opinion. The "treating physician rule" requires an ALJ to give controlling weight to a treating physician's opinion regarding the nature and severity of a claimant's condition when that opinion is well-supported by medically acceptable clinical and diagnostic evidence, and not inconsistent with other substantial evidence. *Gentry*, 741 F.3d at 723, 727-29; *Rogers*, 486 F.3d at 242-43. If an ALJ gives less than controlling weight to a treating source's opinion, she must provide "good reasons" for doing so that are "supported by the evidence in the case record, and … sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527(c)(2); SSR 96–2p, 1996 WL 374188, at *5 (July 2, 1996)). "Even when not controlling, however, the ALJ must consider certain factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability of the physician's

conclusions; the specialization of the physician; and any other relevant factors," and give appropriate weight to the opinion. *Gentry*, 741 F.3d at 723. In all cases, a treating physician's opinion is entitled to great deference. *Id.*

Dr. Dunning opined that Greenly would be off task 25% or more of the day due to her chronic pain, degenerative disc disease and radiculopathy. [R. 10-7, Tr. 257-59]. He further opined that she would be capable of low stress work, although she would have good and bad days and be absent approximately twice a month due to symptoms. [*Id.*]. In support of his opinion, he stated simply, "see notes." [*Id.*, Tr. 257]. The ALJ gave Dr. Dunning's opinion limited weight, stating only that "it is not supported by a majority of the objective medical evidence." [R. 10-2, Tr. 36].

That conclusory statement is too vague to constitute a "good reason" for failing to give controlling weight to Dr. Dunning's opinion. *Gayheart,* 710 F.3d at 375. Moreover, the ALJ minimized the extent of Greenly's treating relationship with Dr. Dunning and mischaracterized the doctor's record of that treatment. From reading the ALJ's decision, one would think that Dr. Dunning examined Greenly only in May 2012, when he actually examined her eleven times from January 2012 to at least May 2012. [R. 10-7, Tr.

12

257-78].

Additionally, the ALJ mischaracterized the only records pertaining to Dr. Dunning to which he referred.  He stated that, in May 2012, Dr. Dunning examined Greenly and found normal strength, coordination and sensation, no tenderness, and a straight leg raising result of 45 degrees.  [R. 10-2, Tr. 36].  The ALJ claimed that "Dr. Dunning gave the claimant other exams, which had similar results." [*Id.*].  In truth, the findings the ALJ described are not contained in a single treatment note from May 2012, but appear to combine findings from three appointments in April and May 2012.  While the negative findings the ALJ relayed are within the records at one time or another, there are also significant positive findings of symptomatology that the ALJ ignored.

Specifically, in April 2012, Dr. Dunning noted a straight leg raising test to 45 degrees "with pain," local lumbar tenderness, slightly diminished strength of the left tibial muscles, trouble with heal to toe walking without watching her feet, impaired coordination, absent knee reflexes and an ataxic gait.  [R. 10-7, Tr. 264-65].  He assessed Greenly as having "[w]orsening radicular symptoms involving left leg and poorly controlled radicular pain." [*Id.*]  At an appointment at the beginning of May 2012, he noted normal neurological function and gait, tenderness to palpation, an

inability to perform a straight leg raising test and a diminished left knee reflex. [*Id.*, Tr. 262-63]. At an appointment at the end of May, Dr. Dunning documented a normal gait, strength and coordination. [*Id.*, Tr. 260-61]. For some reason, Dr. Dunning did not document a back or musculoskeletal examination at this appointment, but did add Carisoprodal (muscle relaxer) and Meloxicam (nonsteroidal anti-inflammatory) to Greenly's long list of pain medications, which included Roxicodone (oxycodone) and two different strengths of MS Contin (morphine sulfate). [*Id.*] During both appointments in May, Dr. Dunning noted that Greenly's radicular symptoms had not progressed since April; he did not indicate that those symptoms had improved and the addition of new medication would suggest otherwise. [*Id.*, Tr. 260-63].

    The ALJ was not required to discuss all of the record evidence in detail, but he must accurately portray those that he did. His failure to do so and his disregard for the objective medical records that supported Dr. Dunning's opinion regarding Greenly's time off-task constitutes error requiring remand. *Keeton v. Comm'r of Soc. Sec.*, 583 Fed. Appx. 515, 527-28 (6th Cir. 2014) (Case remanded when ALJ violated treating physician rule by failing to explain inconsistency between opinion and evidence of record, and mischaracterized evidence).

### C. Development of RFC

Greenly argues that, given the ALJ's rejection of her treating physician opinion, the lack of any medical opinion of record left the ALJ to formulate his RFC from the raw medical data alone, which was error. The Court agrees.

In formulating his RFC, the ALJ ostensibly relied upon the objective findings in the medical records, including the results of physical examinations, x-ray and MRI testing, and expressly gave limited weight to Dr. Dunning's opinion relating to Greenly's propensity to be off task. [R. 10-2, Tr. 35-37; R. 10-7, Tr. 257-59]. The ALJ's RFC did not benefit from an opinion from a State agency or other consultant; he acted outside of his expertise and interpreted the objective medical evidence on his own.

"ALJs must not succumb to the temptation to play doctor and make their own independent medical findings." *Simpson v. Comm'r of Soc. Sec.*, 344 Fed. Appx. 181, 194 (6th Cir. 2009) (citation and internal quotation marks omitted). This caution applies when ALJs are establishing RFCs. "[C]ourts have stressed the importance of medical opinions to support a claimant's RFC, and cautioned ALJs against relying on their own expertise in drawing RFC conclusions from raw medical data." *Allen v. Comm'r of Soc. Sec.,* No. 12–15097, 2013 U.S. Dist. LEXIS 150236, *44–45, 2013 WL

5676254 (E.D. Mich. Sept. 13, 2013) *adopted by* 2013 U.S. Dist. LEXIS 149851, 2013 WL 5676251 (E.D.Mich. Oct. 18, 2013) (collecting cases).

In *Allen*, as in this case, no consulting physician had assessed the claimant's RFC and the ALJ did not adopt the only medical opinion regarding the claimant's medical limitations, in violation of the treating physician rule. *Id.* at *14-15. The court noted that there may be circumstances in which the medical evidence is so clear that an ALJ can justify a RFC assessment without the benefit of a medical opinion, but not where the claimant had well-documented impairments.[4] *Id.* at *16. "Under these circumstances, an expert medical advisor is necessary to properly evaluate plaintiff's impairments, symptoms and functional limitations." *Id.*

*See also* Zaft v. Comm'r of Soc. Sec., No. 12-13415, 2013 WL 5340772 (E.D. Mich. Sept. 23, 2013) (ALJ erred by interpreting raw medical data without the benefit of expert medical opinion, and relatedly declining to adopt RFC of treating physician without stating good reason).

In the absence of medical expertise, this Court cannot meaningfully determine whether the ALJ's recitation of objective medical evidence is substantial evidence for his RFC assessment. Thus, on remand, the ALJ

---

[4] *See, e.g.,* Rudd v. Comm'r of Soc. Sec., 531 Fed. Appx. 719, 726-27 (6th Cir. 2013) (x-rays showed no abnormalities, and examinations showed no issues with claimant's gait or standing).

16

should seek medical expertise before formulating his RFC to the extent that he continues to assign little weight to Dr. Dunning's opinion.

## IV. CONCLUSION

The Court finds that the ALJ erred in failing to obtain a medical opinion on the issue of equivalency, in failing to give good reasons for the weight afforded to Dr. Dunning's opinion, and in formulating a RFC assessment without the benefit of a medical opinion. For these reasons, the Court **RECOMMENDS** that Greenly's Motion for Summary Judgment **[R. 14]** be **GRANTED IN PART** to the extent it seeks remand, but **DENIED IN PART** to the extent it seeks reversal and a direct award of benefits, the Commissioner's Motion **[R. 22]** be **DENIED** and this case be **REMANDED** for further consideration. On remand, the Court notes that Greenly's credibility should need to be reassessed in light of the additional evidence elicited.

s/Elizabeth A. Stafford

ELIZABETH A. STAFFORD
United States Magistrate Judge

Dated: July 27, 2015

## **NOTICE TO THE PARTIES REGARDING OBJECTIONS**

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). A copy of any objection must be served upon this Magistrate Judge. E.D. Mich. LR 72.1(d)(2).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this Report and Recommendation to which it pertains. Not later than fourteen days after service of objections, **the non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc. The response must be **concise and proportionate in**

**length and complexity to the objections**, but there is otherwise no page limitation. If the Court determines that any objections are without merit, it may rule without awaiting the response.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 27, 2015.

> s/Marlena Williams
> MARLENA WILLIAMS
> Case Manager